UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLIVE TREE ASSOCIATES, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE VIEW APARTMENTS, LLC, et al., <br><br> Defendants. | Case No.  26-cv-02340-SVK <br><br> **ORDER ON:  (1) MOTION OF DEFENDANT ALEC WANG TO TRANSFER CASE; AND (2) MOTION OF DEFENDANTS EDDIE KOZAK, THE VIEW APARTMENTS, LLC AND THE VIEW MANAGEMENT, LLC TO CHANGE VENUE** <br><br> Re: Dkt. Nos. 11, 19 |

## I.    INTRODUCTION AND BACKGROUND

In 2022, Plaintiff Ding Zhou ("Zhou"), on behalf of non-party Zhou-Hu Family Trust ("Trust'), and Defendant Eddie Kozak ("Kozak"), on behalf of Defendant The View Apartments, LLC ("View Apartments"), signed a Subscription Agreement ("Subscription Agreement") for an investment in a multifamily real estate project in Alabaster, Alabama ("Project").  *See* Dkt. 1 (Complaint) ¶ 12; Ex. 1 to Dkt. 11-2 (Subscription Agreement).  The offering materials concerning the investment indicated that the Project would be operated through View Apartments and that Class A investors would receive a preferred annual return and periodic distributions. Dkt. 1 ¶ 14.

The Complaint alleges that between the fourth quarter of 2022 and the first quarter of 2024, Plaintiffs received periodic preferred return distributions consistent with the distribution structure described in the offering materials, but the distributions then stopped, and Plaintiffs did not receive any preferred return payments for the remainder of 2024 or at any time during 2025. *Id.* ¶¶ 16-17.  Plaintiffs allege that Defendants provided little documentation concerning the Project's operations, financial performance, or management from 2022 through 2024, and when

United States District Court
Northern District of California

Plaintiffs finally obtained partial financial records, they contained various irregularities and inconsistencies. *Id.* ¶¶ 18-21.

Plaintiffs filed this lawsuit on March 17, 2026. The Plaintiffs are: (1) Olive Tree Associates, LLC ("Olive Tree"); and (2) Zhou, who is the managing member of Olive Tree. *Id.* ¶¶ 1-2. The Defendants are: (1) View Apartments; (2) The View Management, LLC ("View Management), which is the manger and controlling entity of View Apartments; (3) Eddie Kozak ("Kozak"), a "managing member and/or controlling person of View Apartments and View Management"; and (4) Alec Wang ("Wang"), who Plaintiffs allege is "affiliated with Tana Investment Group, LLC and acted as a promoter, intermediary, and/or agent in connection with Plaintiffs' investment in the Project." *Id.* ¶¶ 3-6. The Complaint contains causes of action for (1) breach of contract; (2) breach of fiduciary duty; (3) fraud – intentional misrepresentation; (4) negligent misrepresentation; and (5) unjust enrichment/restitution.

Now before the Court are two motions seeking to transfer this case to the Northern District of Alabama or another federal district court in Alabama: one motion brought by Defendant Wang (Dkt. 11 – the "Wang Motion to Transfer"), and the other brought by Defendants View Apartments, View Management, and Kozak (Dkt. 19- the "View Motion to Transfer"). All Parties have consented to the jurisdiction of a magistrate judge. Dkt. 17, 18, 22, 23 24.

The Court finds these motions suitable for determination without a hearing. Civ. L.R. 7-1(b). For the reasons that follow, both motions to transfer are **GRANTED** and this action will be **TRANSFERRED** to the United States District Court for the Northern District of Alabama.

II.    DISCUSSION

The Subscription Agreement concerning the investment at issue in this case is a written agreement signed by Kozak on behalf of View Apartments and by Zhou on behalf of the Trust. Ex. 1 to Dkt. 11-2 at PDF pp. 24-25. The Subscription Agreement contains the following provision:

////

////

2

United States District Court
Northern District of California

> 10.4 <u>Governing Law</u>. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Alabama without regard to principles of conflict of laws (except insofar as affected by the securities or "blue sky" laws of the state or similar jurisdiction in which the Offering described herein has been made to you). The exclusive venue for all disputes arising out of or relating to this Agreement shall be the federal or state courts located in Alabama. You irrevocably consent to the exercise of personal jurisdiction over you by such courts for purposes of resolving such disputes.

*Id.* at PDF p. 15.  All Defendants named in this action seek to transfer the case to a federal district court in Alabama based on the forum selection clause pursuant to 28 U.S.C. § 1404(a).  *See* Dkt. 11-1 at 4; Dkt. 19-1 at 3.

### A.    Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  Typically, the "transfer inquiry proceeds in two steps. First, the Court determines 'whether the transferee district was one in which the action might have been brought by the plaintiff.'"  *California v. Bureau of Land Mgmt.*, No. 18-cv-00521-HSG, 2018 WL 3439453, at *2 (N.D. Cal. July 17, 2018) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960)).  Second, "the Court conducts an individualized case-specific analysis of convenience and fairness" considering the private interests of the Parties and certain public interests.  *See id.* (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotation marks omitted)).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 63 (2013).  The proper way to enforce a forum selection clause is through a motion to transfer under 28 U.S.C. § 1404(a).  *Id*. at 59.  When a defendant files such a motion, "a district court should ordinarily transfer the case to the forum specified in that clause" absent "extraordinary circumstances unrelated to the convenience of the parties."  *Id.* at 62.

Where a motion to transfer is based on a forum selection clause, a district court must "adjust [the] usual § 1404(a) analysis in three ways."  *Id.* at 63.  "First, the plaintiff's choice of

3

forum merits no weight," and "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, the court "should not consider arguments about the parties' private interests" and "must deem the private-interest factors to weigh entirely in favor of the preselected forum" *Id.* at 64. Third, "[t]he court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right." *Id.* at 65-66. This analysis "presupposes a contractually valid forum-selection clause." *Id.* at 62 n.5.

In diversity cases, the enforcement and interpretation of forum selection clauses is determined under federal law. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988)

### B.      Analysis

The Parties generally agree on the legal framework for venue that applies when a contract contains a forum selection clause. Their disagreement primarily centers on whether the forum selection clause in the Subscription Agreement applies to all Parties and claims in this litigation. The Court first addresses those issues, then analyzes whether the forum selection clause is enforceable, whether the proposed transferee forum is appropriate, and whether the entire action should be transferred.

### 1.      Applicability of the forum selection clause to the Parties

The Subscription Agreement was signed by Plaintiff Zhou as Trustee of non-party Zhou-Hu Family Trust and by Defendant Kozak as Manager of Defendant View Management. Ex. 1 to Dkt. 11-2 at PDF pp. 24-25. The Subscription Agreement was not signed by Plaintiff Olive Tree, Defendant Wang, or Defendant View Apartments. *Id.*

"[T]he general rule is that a forum-selection clause may be enforced only by and against the parties to the underlying contract" because "[o]rdinarily, a provision in a contract 'may not be invoked by one who is not a party to the agreement.'" *Golden State Orthopaedics, Inc. v. Howmedica Osteonics Corp.*, No. C 14-3073 PJH, 2014 WL 12691050, at *4 (N.D. Cal. Oct. 31, 2014) (quoting *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993)). However, the Ninth Circuit has stated that "a range of transaction participants, parties and non-parties, should

United States District Court
Northern District of California

United States District Court
Northern District of California

benefit from and be subject to forum selection clauses." *Manetti-Farrow*, 858 F.2d at 514 n.5 (citations omitted); *see also Graham Tech. Solutions v. Thinking Pictures*, *Inc.*, 949 F. Supp. 1427, 1434 (N.D. Cal. 1997).  In *Manetti-Farrow*, non-signatory defendants sought to enforce a forum selection clause against a signatory plaintiff, and the Ninth Circuit found that a forum selection clause applied to all of the defendants, including officers of the signatory corporation sued in their individual capacity and three corporate defendants, even though only one of the corporate defendants had signed the agreement containing the clause.  848 F.2d at 514 n.5.  The court held that where "the alleged conduct of the non-parties is so closely related to the contractual relationship ... the forum selection clause applies to all defendants." *Id.*

The Court now considers how these principles apply to each of the Plaintiffs and Defendants in this case.

### a.    Plaintiffs

The Plaintiffs named in the Complaint are Zhou and Olive Tree.  Dkt. 1 ¶¶ 1-2.  Plaintiff Zhou signed the Subscription Agreement in her capacity as Trustee of the Zhou-Hu Family Trust (the "Trust"), which is <u>not</u> a party to this action.  *See* Dkt. 1; *see also* Ex. 1 to Dkt. 11-2 at PDF pp. 24-25.  The Subscription Agreement was not signed by Olive Tree, which <u>is</u> named as a Plaintiff in this action.  Dkt. 1 ¶ 2; Dkt. 11-2 at PDF pp. 24-25.

Plaintiff Zhou, who signed the Subscription Agreement, did not argue in opposition to the Wang Motion to Transfer that because she signed the agreement in a representative capacity (as Trustee of the Trust) she is not bound by the forum selection clause, but she does make that argument in passing in her opposition to the View Motion to Transfer.  Dkt. 27 at 2 ("the Subscription Agreement identifies the Trust as the subscribing investor, *not* Zhou individually" and "[t]o the extent Defendants now seek to compel Ms. Zhou personally to litigate in Alabama, they bear the burden of showing she consented to a clause she did not sign" (emphasis in original)); *see also id.* at 5.  The only case Plaintiffs cite in support of this argument rejected a similar argument and enforced a forum selection clause in agreements concerning a real estate investment against individual investors who signed the agreements in a representative capacity, finding that their argument was "inconsistent with their claims for breach of contract based on

improper operation and mismanagement of the property, which falls within the [agreements'] ambits." *Kumar v. RBS Fin. Prods.*, No. CV 14-07474-SVW-PLA, 2014 WL 12589637, at *5 (C.D. Cal. Dec. 4, 2014). Similarly here, although Zhou signed the Subscription Agreement as Trustee of the Trust, she is now a Plaintiff in this case asserting her own claims for breach of that agreement. Accordingly, she is bound by the forum selection clause in the agreement.

Turning to Plaintiff Olive Tree, the Complaint does not explain the relationship, if any, between the Trust (on behalf of which Plaintiff Zhou signed the Subscription Agreement) and Olive Tree (which did not sign the agreement). In support of their motion to transfer, Defendants have provided declarations from Waleska Iglesias, a Manager of Defendant View Management, and Defendant Kozak, a Manager of View Management and View Apartments, stating that in 2024, Plaintiff Zhou requested that all distributions, tax documents, and other communications regarding the investment be directed to Olive Tree, and View Management complied with that request. Dkt. 11-2 ¶ 9; Dkt. 19-2 ¶ 2. Plaintiffs acknowledge Zhou's 2024 request but argue that it "did not turn Olive Tree into a party to the Agreement" and "does not constitute consent by Olive Tree to the forum-selection clause." Dkt. 16 at 4, 9-10; *see also* Dkt. 27 at 9.

The Complaint alleges that Defendant Wang first approached Plaintiff Zhou in Zhou's capacity as "acting as trustee of the Zhou-Hu Family Trust." Dkt. 1 ¶ 12. However, in the Complaint, Plaintiffs allege that "*Olive Tree* invested capital in Defendants' real estate investment project and suffered economic injury in California as a result of Defendants' conduct." *Id.* ¶ 1 (emphasis added). Notably, the Complaint also alleges that "*Plaintiffs* and Defendants entered into a valid written contract governing *Plaintiffs'* investment in The View Apartments project, including the Subscription Agreement and related offering documents." *Id.* ¶ 25 (emphasis added). The Complaint thus does not distinguish the Trust from Olive Tree, and in fact the breach of contract claim asserted by both Plaintiffs—Zhou and Olive Tree—is predicated on an alleged breach of the Subscription Agreement. *See id.* ¶ 28. In their opposition to Wang's motion to transfer, Plaintiffs do not attempt to reconcile their argument that Olive Tree is not subject to the forum selection clause because it did not sign the Subscription Agreement with the fact that, at the same time, Olive Tree is asserting a claim for breach of that contract.

United States District Court
Northern District of California

In *Graham*, a copyright infringement case brought by GTSI against TPI, the Ninth Circuit held that a forum selection agreement in a professional services agreement signed by an individual (Mr. Graham) and the defendant (TPI) applied to a company (GTSI) and individual (Mr. Fuller) who did not sign the agreement. 949 F. Supp. at 1434. The court found that GTSI, the plaintiff in the case, had succeeded to any rights Mr. Graham, the signatory, had in the computer programs at issue, and that while Mr. Fuller's role was "not as clearly defined," a crucial factual issue was the nature of any work performed by Mr. Fuller, who was a consultant to Mr. Graham. *Id.* "Accordingly, the conduct of GTSI and Mr. Fuller are closely related [to] the contractual relationship between Mr. Graham and TPI, and the forum selection clause applies to both GTSI and Mr. Fuller in spite of the fact that they are not signatories" to the contract. *Id.*

In *Holland Am. Line Inc. v. Wartsila North America, Inc.*, the Ninth Circuit concluded that a forum selection clause was binding upon non-signing parties "because any transactions between those entities and [the plaintiff] took place as part of the larger contractual relationship" between plaintiff and the signatory defendant. 485 F.3d 450, 456 (9th Cir. 2007) ("Just as the disputed conduct in *Manetti-Farrow* arose out of the contract with Gucci Parfums, the alleged conduct of BVNA and BV Canada is tied to Holland America's contract with Bureau Veritas.").

Plaintiffs attempt to distinguish *Graham* on the ground that it "requires that the non-signatory's conduct be 'closely related to the underlying contractual relationship' or that the non-signatory 'knowingly benefited from the transaction.'" Dkt. 16 at 10; Dkt. 27 at 9. But Plaintiffs Zhou and Olive Tree both satisfy these criteria. Zhou alleges that she "agreed to participate in the Project," "personally participated in the investment and suffered financial harm from Defendants' conduct." Dkt. 1 ¶¶ 2, 13. Plaintiffs admit that Olive Tree "received redirected distributions for a brief period before the distributions stopped, and it suffered the harm when those payments ceased." *Id.*

Given this close relationship between the alleged conduct of Zhou and Olive Tree and the contractual relationship formed in the Subscription Agreement and because the Plaintiffs benefited from the agreement, the forum selection cause in the Subscription Agreement applies to both Zhou and Olive Tree even though Zhou signed the agreement in her capacity as Trustee of the Trust and

7

Olive Tree did not sign the agreement. *See Graham*, 949 F. Supp. at 1434.[1]

In light of this conclusion, the Court need not decide Defendants' alternative argument that Plaintiffs are equitably estopped from repudiating the forum selection clause contained in the contract they are attempting to enforce. *See* Dkt. 11-1 at 7-8; Dkt. 19-1 at 7.

### b. Defendants

Defendant Kozak signed the Subscription Agreement on behalf of Defendant View Apartments. Dkt. 11-2 at PDF pp. 24-25. Defendants Alec Wang and View Management did not sign the agreement. As discussed above, forum selection agreements can be invoked by and against non-signing parties whose alleged conduct is closely related to the contractual relationship. *Manetti-Farrow*, 848 F.2d at 509. All the Defendants are closely related to the contractual relationship reflected in the Subscription Agreement. Specifically, the Complaint alleges that Wang "acted as a promoter, intermediary, and/or agent in connection with Plaintiffs' investment in the Project" and "introduced Plaintiffs to the investment opportunity and participated in the solicitation and onboarding process." Dkt. 1 ¶ 6; *see also id.* ¶¶ 12-13, 39-42, 47-49. The Complaint further alleges that Wang represented that problems that later arose with respect to the Project were temporary and "encouraged Plaintiffs to remain invested." *Id.* ¶ 19. The Complaint explains that View Management "is the manager and controlling entity of View Apartments and exercised control over investor funds and project operations" and that Kozak is "a managing member and/or controlling person of View Apartments and View Management who personally participated in the conduct alleged herein." *Id.* ¶¶ 4-5. Thus, the Defendants are all "closely related to the contractual relationship" regardless of whether they signed the Subscription Agreement. *Manetti-Farrow,* 848 F.2d at 514.

Moreover, in numerous cases since *Manetti-Farrow* and *Holland America Line*, courts have enforced a forum selection clause against "non-signatory *defendants* [who] were seeking to avail themselves of the forum selection clause." *Mewawalla v. Middleman*, 601 F. Supp. 3d 574,

---

[1] In the View Motion to Transfer, Defendants characterize Olive Tree as a "successor in interest" to the Trust (Dkt. 19-1 at 7) but do not provide factual and legal support for that statement. The Court's conclusion that Olive Tree is subject to the forum selection clause is not premised on the successor-in-interest theory.

United States District Court
Northern District of California

589 (N.D. Cal. 2022) (citing cases; emphasis in original). In that situation, by seeking to enforce a forum selection clause, non-signatory defendants consent to jurisdiction in the alternative forum. *Id.*

Accordingly, the forum selection cause in the Subscription Agreement applies to all Defendants, regardless of whether they signed the agreement. *See Manetti-Farrow,* 848 F.2d at 514; *Graham*, 949 F. Supp. at 1434.

### 2.    Scope of forum selection clause

The Subscription Agreement states that it "all disputes arising out of or relating to this Agreement" are covered by the forum selection clause. Ex. 1 to Dkt. 11-2 at ¶ 10.4. Plaintiffs argue that their tort claims against Defendant Wang, which are claims for fraud, negligent misrepresentation, and breach of fiduciary duty, do not arise out of or relate to the Subscription Agreement and thus do not fall within the scope of the forum selection clause. Dkt. 16 at 8.[2] Plaintiffs make a similar argument regarding their fraud and negligent misrepresentation claims against Defendant Kozak. Dkt. 27 at 7. According to Plaintiffs, these claims rest on Wang's and Kozak's "own conduct, not on the terms of the Subscription Agreement." Dkt. 16 at 8; Dkt. 27 at 7.

"[T]he Ninth Circuit has found that forum selection clauses can be equally applied to contractual and tort causes of action where resolution of the tort claims relates to the interpretation of the contract." *Graham*, 949 F. Supp. at 1432 (citing *Manetti–Farrow*, 858 F.2d at 514).

Here, according to Plaintiffs, the Subscription Agreement required Defendants "to make required preferred return distributions beginning in or around the second quarter of 2024" and "to provide timely financial reporting and a proper accounting of Project funds." *See* Dkt. 1 ¶ 27. Plaintiffs' tort claims for fraud, negligent misrepresentation, and breach of fiduciary are premised on Defendants' alleged failure to comply with these contractual requirements. *See id.* ¶ 33 (alleging that Defendants breached fiduciary duties by "failing to make required investor

---

[2] Plaintiffs state in their opposition brief to they do not assert a breach of contract claim against Wang (Dkt. 16) at 8-9), but the Complaint does not specify which Defendants are the target of each cause of action (*see* Dkt. 1).

distributions, failing to provide accurate financial reporting" and engaging in other conduct); *id.* ¶¶ 40-41 (alleging that Defendants made various representations knowing they were false or recklessly without regard for the truth, including that "preferred distributions would be paid in accordance with the governing investment documents" and that "accurate and transparent financial reporting would be provided to investors"); *id.* ¶ 48 (alleging negligent misrepresentation including "that distributions would be supported by Project income, and that financial reporting would be accurate and transparent"). Each of these tort claims "relates in some way to rights and duties enumerated in the [] contract" and "cannot be adjudicated without analyzing whether the parties were in compliance with the contract." *Manetti-Farrow,* 858 F.2d at 514. Accordingly, the tort causes "are within the scope of the forum selection clause." *Id.*

This conclusion is consistent with the "arising out of or relating to" language used in the forum selection clause in the Subscription Agreement, which is construed broadly under federal law. *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018). Whereas forum selection clauses covering disputes "arising out of" a particular agreement "apply only to disputes relating to the interpretation and performance of the contract itself," forum selection clauses that cover disputes "related to" an agreement "apply to any disputes that reference the agreement or have some logical or causal connection to the agreement." *Id.* (internal quotation marks and citations omitted). Here, Plaintiffs' tort claims are sufficiently connected to the Subscription Agreement to fall within the scope of the forum selection clause.

### 3.    Enforceability of the forum selection clause

As a general rule, when "the parties' contract contains a valid forum-selection clause," that clause "[should be] given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63 (citation and quotations omitted and brackets in original); *see also Graham*, 949 F. Supp. at 1434 (forum selection clauses are presumptively valid and are enforceable absent a strong showing by the party opposing the clause that enforcement would be unreasonable or unjust, or that the clause [is] invalid for reasons such as fraud or overreaching). In evaluating a case where a forum-selection clause is present, "the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing

10

that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 571 U.S. at 63. Additionally, the Court "should not consider arguments about the parties' private interests," including whether the chosen forum is "inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64. Therefore, "a district court may consider arguments about public-interest factors only . . . Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

Because *Atlantic Marine* "provides little guidance [ ] regarding what constitutes an 'exceptional reason' or 'extraordinary circumstances' in which courts should not give controlling weight to a valid forum-selection clause," the Ninth Circuit has turned to the Supreme Court's prior guidance on this issue. *Sun*, 901 F.3d at 1088 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)). Under *Bremen*, a forum-selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen*, 407 U.S. at 10. Enforcement of a forum-selection clause is "unreasonable" if:

> (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.

*Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (quoting *Bremen*, 407 U.S. at 10 (internal quotations and citations omitted)); *see also Aimone v. Investorflow LLC*, No. 23-CV-00118-DMR, 2023 WL 3483287, at *3 (N.D. Cal. May 15, 2023).

In response to the Wang Motion to Transfer, Plaintiffs argue against transfer based on a traditional section 1404(a) analysis, due to Plaintiffs' position that the forum selection clause in the Subscription Agreement does not apply. *See* Dkt. 16 at 10-12. Because the Court has concluded that all parties are bound by the forum selection clause, Plaintiffs must instead demonstrate that this is an "exceptional case" under the criteria outlined above.

In response to the View Motion to Transfer, Plaintiffs acknowledge the burden they bear

under *Atlantic Marine* and attempt to show that public-interest factors overwhelming disfavor transfer. Dkt. 27 at 14-15 (arguing that "three of the four defendants are California residents, both Plaintiffs are California based," "the alleged tortious conduct (the solicitation, the misrepresentations, the ongoing communications) was directed into California," and "[l]itigating those claims across the country in a forum that bears no relationship to the conduct or the parties would impose administrative difficulties on this Court's sister tribunal and on the parties."). In the reply in support of the View Motion to Transfer, Defendants argue that the Alabama district court is a proper forum because "Plaintiffs voluntarily invested in an Alabama real estate project operated by Alabama entities pursuant to an agreement governed by Alabama law and containing an exclusive Alabama forum selection clause." Dkt. 35 at 9. Defendants' argument on this issue is persuasive. Plaintiffs have failed to identify any public-interest factors that make this an exceptional case that would warrant overriding the forum selection agreement.

### 4.    Transferee forum

Section 1404(a) "permits transfer to any district where venue is also proper (*i.e.*, 'where [the case] might have been brought') or to any other district to which the parties have agreed by contract or stipulation." *Atl. Marine,* 571 U.S at 59. Defendants have demonstrated that the Northern District of Alabama is a proper transferee forum because it possesses subject matter jurisdiction, venue, and personal jurisdiction over the Defendants and because the Parties consented to that forum in the forum selection clause. *See* Dkt. 11-1 at 8-9; Dkt. 19-1 at 8-9. Plaintiffs do not argue or demonstrate otherwise.

### 5.    Severance of parties and/or claims

Plaintiffs argue that "[i]f the forum-selection clause does not bind all parties and all claims, the appropriate remedy is to retain jurisdiction over those claims not subject to the clause, not to transfer the entire action." Dkt. 27 at 17. Having concluded that the forum selection clause covers all Parties and claims in this case, transfer of the entire action is appropriate.

////

////

////

III.    **CONCLUSION**

For the foregoing reasons, the Wang Motion to Transfer and View Motion to Transfer are **GRANTED**, and the Clerk of Court is directed to **TRANSFER** this action to the United States District Court for the Northern District of Alabama and close the file.

**SO ORDERED.**

Dated: July 6, 2026

_____
SUSAN VAN KEULEN
United States Magistrate Judge